UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

INVICTUS ASSET                  )
MANAGEMENT, LLC,                 )
                                )    CASE NO. 1:09CV851
        Plaintiff,              )
                                )
    vs.                         )    **AMENDED COMPLAINT FOR**
                                )    **DECLARATORY JUDGMENT**
BLUE MARLIN FUND, LLC,          )
its alter ego, BLACK RHINO      )
FUND, LP and TRADEDESK          )
CAPTIAL, LLC,                   )
                                )
        Defendants.             )
_____ )

Plaintiff, complaining of the Defendants, alleges as follows:

JURISDICTION

1.      Plaintiff is a duly formed North Carolina limited liability company conducting business out of its principal office located within the State of North Carolina, and its members are North Carolina residents.

2.      Defendant Blue Marlin Fund, LLC, upon information and belief, is or was a limited liability company organized under the laws of the Commonwealth of Virginia with Black Rhino Fund, LP as its sole member.

3.      Defendant Black Rhino Fund, LP is, upon information and belief, a limited partnership organized under the laws of the Commonwealth of Virginia conducting its business out of its primary office located in the City of Richmond, Virginia, and whose sole and managing partner, Brad A. Sellers, is resident of Richmond, Virginia.

4.      Defendant TradeDesk Capital, LLC is or was a limited liability company organized under the laws of the Delaware and, upon information and belief, whose sole member is a resident of North Carolina.

5.      The matter in controversy exceeds, exclusive of interest and costs, the sums specified by 28 U.S.C. § 1332.

1

## FACTUAL ALLEGATIONS

6.      The allegations in Paragraphs 1 through 5 of the jurisdictional statement are realleged as if fully set forth herein.

7.      Blue Marlin Fund, LLC (hereinafter "Blue Marlin") was organized on or about September 30, 2003. The purpose of Blue Marlin was to engage in the trading of mutual funds, other equities, equity options and commodity futures and options and to engage in any and all general business activities necessary, desirable, related or incidental thereto.

8.      On or about October 15, 2003, Blue Marlin entered into an Investment Management Agreement with Invictus Asset Management, LLC (hereinafter "Invictus"). A true and accurate copy of the Investment Management Agreement ("Agreement") is attached hereto as Exhibit "A," and is incorporated herein by reference.

9.      As compensation for its services, and as set forth in the Agreement, Invictus charged Blue Marlin a fixed rate investment management fee (the "IM Fee") of three percent (3%) annually to be paid on a monthly basis.

10.     From the inception of the Agreement through approximately November of 2004, Blue Marlin paid the applicable IM Fee.

11.     Because of financial problems of the manager and members of Blue Marlin, Invictus agreed in December or January of 2004/2005 to defer the payment of the IM Fee to Invictus.

12.     In or about August of 2005, the other members of Blue Marlin assigned and transferred their entire interests in Blue Marlin to Black Rhino Fund, LLP (hereinafter "Black Rhino"). Following this assignment, Black Rhino became the sole owner of Blue Marlin. However, this in reality was nothing more than a name change, and Black Rhino became the successor to and alter ego of Blue Marlin.

13.     Black Rhino therefore became responsible for all the duties, rights, obligations and liabilities of Blue Marlin including, but not limited to, the obligations of Blue Marlin pursuant to the Agreement entered into by and between Invictus and Blue Marlin.

2

14.     Invictus, from the inception of the Agreement, has duly and faithfully fulfilled all of its obligations pursuant to the Agreement, both to Blue Marlin and its successor and alter ego, Black Rhino.

15.     In approximately September of 2008, the investment funds of Black Rhino had dwindled to a point where it was no longer feasible or economically advisable for those funds to continue to be managed by Invictus in a separately managed account. At the request of Invictus and with the consent of Black Rhino, the remaining funds of Black Rhino were then transferred to TradeDesk Capital, LLC, where those funds continued to be managed by Invictus.

16.     Following this transfer, Invictus agreed to no longer charge a fee for its management services in respect of these funds. However, at no time did Invictus agree to waive or release Blue Marlin or its alter ego, Black Rhino, from the payment of the prior deferred and accrued IM Fees or otherwise relinquish its rights in respect of payment of those fees, and, therefore, Blue Marlin and its alter ego, Black Rhino, remain liable to Invictus for payment of all such deferred and accrued IM Fees plus carrying charges through the date of transfer.

17.     In or about April of 2009, the manager of Black Rhino requested that his position (the Black Rhino Funds) be liquidated and paid out of TradeDesk Capital, LLC.

18.     Demand was made for the payment of the deferred fees pursuant to the Agreement, but said demand was refused.

19.     In approximately September of 2009, the Black Rhino funds were liquidated and returned. However, TradeDesk, pursuant to its operating agreement, withheld funds in the amount of $97,406.10 for the liability of Blue Marlin/Black Rhino to Invictus for the deferred IM Fees and has established a reserve held in a separate bank account pending resolution of this dispute.

20.     A genuine dispute has arisen between and among the parties with regard to the right of Invictus to its deferred management fees. Black Rhino, through counsel, has demanded a return of these fees contending, among other things, there was no right of TradeDesk to establish a reserve for the disputed fees.

3

DEMAND FOR DECLARATORY JUDGMENT

21.    The allegations in Paragraphs 1 through 15 of the Factual Allegations above are realleged as if fully set forth herein.

22.    As a genuine controversy exists between and among the parties, Invictus is entitled to a declaratory judgment, declaring that Blue Marlin and its alter ego, Black Rhino, have breached their contract with Invictus and that Invictus is entitled to offset and retain the deferred fees due and payable, along with carrying costs.

WHEREFORE, Invictus prays the Court:

1.    Issue a Declaratory Judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 et. seq., determining that Invictus has a right to offset and retain its management fee to prevent the Defendants from being unjustly enriched and further remedy the breach of contract of the Defendants;

2.    That the costs of this action be taxed to the Defendants;

3.    That the Plaintiff have and recover its costs and attorneys fees from the Defendants;

4.    Grant unto the Plaintiff such other and further relief as the Court deems just and appropriate.


This the 13th day of September, 2010.


/s/ Edwin R. Gatton
Edwin R. Gatton
NCSB #5620
Attorney for Plaintiff

/s/Erik M. Harvey
Erik M. Harvey
NCSB#37663
Attorney for Plaintiff

OF COUNSEL:

IVEY, McCLELLAN, GATTON & TALCOTT, LLP
P. O. Box 3324
Greensboro, North Carolina 27402
Telephone:  336/274-4658
Facsimile:   336/274-4540

4